1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ERIC ZACHARY ANDERSON,                      No.  2:15-cv-1148-KJM-EFB P

12              Plaintiff,

13        v.                                      FINDINGS AND RECOMMENDATIONS

14   TIM VIRGA, et al.,

15              Defendants.

16

17        Plaintiff is a state prisoner proceeding pro se and in forma pauperis in an action brought

18   under 42 U.S.C. § 1983.  He asserts in his amended complaint Eighth Amendment claims for

19   excessive force and deliberate indifference to safety.  The gist of the amended complaint is that

20   defendants unlawfully assigned him to a prison yard with known gang members, two of whom

21   brutally assaulted him.  Plaintiff also alleges that defendant Villasenor unlawfully shot him with a

22   less-lethal block gun in quelling the disturbance.

23        Villasenor moves to dismiss plaintiff's excessive force claim on the ground that (1) it is

24   not cognizable and that (2) qualified immunity shields him from it.  Careful review of the

25   pleadings shows that plaintiff has failed to state a cognizable excessive force claim.  Accordingly,

26   as discussed below, the motion to dismiss should be granted.

27   /////

28   /////

1

1    **I.      Background**

2           **A.      Factual Allegations**

3           At all relevant times, plaintiff was a state inmate at California State Prison, Sacramento

4    ("SAC").  Villasenor worked at SAC as a correctional officer.  ECF No. 23 at 13.

5           On November 11, 2013, plaintiff was on the B-3 Special Housing Unit exercise yard ("the

6    yard").  *Id.*  The yard was "an integrated yard with seven other violent prisoners[,] all [of whom

7    were] validated gang members of different gangs."  *Id.* at 4.  Villasenor was assigned to the yard

8    as a security watch in the gun tower, *id.*, which was located approximately twenty-five feet from

9    the assault described below, ECF No. 35-1 at 3; ECF No. 37 at 3, 9.

10          As plaintiff was doing push-ups, two inmates attacked him.  *Id.*  They held him down,

11   kicked him in the face, and stabbed him approximately fifteen times.  *Id.*  Plaintiff broke free and

12   stood up.  Apparently, plaintiff started running away from one of the attackers, who struck or

13   stabbed him in the back a couple of times before retreating back.  ECF No. 23 at 79; ECF No. 37

14   at 7.  Villasenor ordered plaintiff and his attackers to the ground, immediately shooting plaintiff

15   once in the upper back/shoulder area with a sponge round from a 40 mm block gun.  ECF No. 23

16   at 13, 49, 53.  Plaintiff and his attackers assumed prone positions and there was no further

17   incident.  *Id.* at 79.

18          According to plaintiff, despite watching the entire attack, Villasenor deliberately failed to

19   intervene.  *See id.* at 13, 16.  He also alleges that Villasenor and other correctional officers

20   "thought [he] was a shot caller and . . . was smuggling contraband into prison with other

21   correctional officers."  *Id.* at 17.  Therefore, the officers "made sure inmates knew [he] was doing

22   business with [them] to attempt to ensure [the inmates] would kill [him]."  *Id.*  Plaintiff adds that,

23   when his attackers did not kill him, Villasenor "shot [him] for good measure."  *Id.*

24          **B.      Procedural Background**

25          Plaintiff filed a complaint under § 1983, ECF No. 1, which he amended on March 16,

26   2016, ECF No. 23.  In a screening order, it was determined that plaintiff stated a "potentially

27   cognizable" Eighth Amendment excessive force claim against Villasenor.  ECF No. 26 at 1.

28   /////

1    Villasenor moves to dismiss, generally arguing that plaintiff failed to state a claim for

2    excessive force because he used minimal force in a good-faith effort to restore discipline.  ECF

3    No. 35 at 5.  Villasenor asserts that he did not know who started the altercation and that he had to

4    order all of the inmates down to stop it from escalating.  *Id.* at 6–7.  He further asserts that neither

5    plaintiff nor the attackers complied with his order, which compelled him to fire one round at

6    plaintiff's buttocks, stopping the altercation.  *Id.* at 7.  Additionally, Villasenor argues that he is

7    entitled to qualified immunity because he (1) did not violate plaintiff's constitutional rights and,

8    in any event, (2) the law was not clearly established that his conduct was unlawful.  *Id*. at 8–9.

9    Plaintiff argues in opposition that Villasenor maliciously and sadistically shot him to harm

10   him, not in a good-faith effort to restore discipline.  ECF No. 37 at 2.  He asserts that Villasenor

11   knew that he was the victim and not the aggressor in the attack, and that he was not behaving

12   aggressively when Villasenor shot him.  *Id.* at 3–4, 11.  He also contends that he could not

13   comply with Villasenor's order to get down because the assailants were attacking him and doing

14   so would have endangered him.  *Id.* at 6, 8.  Plaintiff also disputes that Villasenor aimed for his

15   buttocks and contends that he aimed for his head.  *Id.* at 9.  Additionally, plaintiff insists that

16   Villasenor had a motive to allow him to be stabbed and beaten and then to shoot him.  *Id.* at 12.

17   According to plaintiff, Villasenor harbored ill-will toward him because: (1) Villasenor's brother

18   worked at the prison as the "head gang cop" and plaintiff reported him for stealing his phone

19   book during a raid; (2) one of Villasenor's coworkers was the son of a correctional officer whom

20   plaintiff had allegedly bribed to bring him cell phones; and (3) Villasenor knew plaintiff's

21   attackers longer than he knew plaintiff.  *Id.* at 5, 12.

22   **II.      Standards on a Motion to Dismiss**

23   To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a

24   complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Bell*

25   *Atl. Corp. v. Twombly*, 550 U.S. 544, 562–63, 570 (2007) (stating that the 12(b)(6) standard that

26   dismissal is warranted if plaintiff can prove no set of facts in support of his claims that would

27   entitle him to relief "has been questioned, criticized, and explained away long enough," and that

28   having "earned its retirement," it "is best forgotten as an incomplete, negative gloss on an

3

1   accepted pleading standard").  Thus, the grounds must amount to "more than labels and

2   conclusions" or a "formulaic recitation of the elements of a cause of action."  *Id.* at 555.  Instead,

3   the "[f]actual allegations must be enough to raise a right to relief above the speculative level on

4   the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.*

5   (citation omitted).  Dismissal may be based either on the lack of cognizable legal theories or the

6   lack of pleading sufficient facts to support cognizable legal theories.  *Balistreri v. Pacifica Police*

7   *Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (citation omitted).

8       The complaint's factual allegations are accepted as true.  *Church of Scientology of Cal. v.*

9   *Flynn*, 744 F.2d 694, 696 (9th Cir. 1984) (citations omitted).  The court construes the pleading in

10  the light most favorable to plaintiff and resolves all doubts in plaintiff's favor.  *Parks Sch. of Bus.,*

11  *Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) (citation omitted).

12      The court may disregard allegations contradicted by the complaint's attached exhibits.

13  *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998) (citation omitted).

14  Furthermore, the court is not required to accept as true allegations contradicted by judicially

15  noticed facts.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (citing

16  *Mullis v. U.S. Bankr. Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987)).  The court also may consider

17  matters of public record.  *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986)

18  (citations omitted).  "[T]he court is not required to accept legal conclusions cast in the form of

19  factual allegations if those conclusions cannot reasonably be drawn from the facts alleged."

20  *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754–55 (9th Cir. 1994) (citations omitted).  Nor

21  must the court accept unreasonable inferences or unwarranted deductions of fact.  *Sprewell*, 266

22  F.3d at 988 (citation omitted).

23      In general, pro se pleadings are held to a less stringent standard than those drafted by

24  lawyers.  *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam).  The court has an obligation

25  to construe such pleadings liberally.  *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)

26  (en banc).  However, the court's liberal interpretation of a pro se complaint may not supply

27  /////

28  /////

1  essential elements of the claim that were not pled.  *Ivey v. Bd. of Regents of Univ. of Alaska*, 673

2  F.2d 266, 268 (9th Cir. 1982); *see also Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992) (per

3  curiam).

4  **III.   Analysis**

5        "When prison officials use excessive force against prisoners, they violate the inmates'

6  Eighth Amendment right to be free from cruel and unusual punishment."  *Clement v. Gomez*, 298

7  F.3d 898, 903 (9th Cir. 2002).  To establish a claim for excessive force based on a prison

8  official's use of force during a prison disturbance, the plaintiff must show that the officer applied

9  the force maliciously and sadistically to cause harm rather than in a good-faith effort to maintain

10  or restore discipline.  *Hudson v. McMillian*, 503 U.S. 1, 6 (1992).  The standard has objective and

11  subjective elements.  Objectively, the alleged wrongdoing must be "harmful enough to establish a

12  constitutional violation."  *Id.* at 8 (citation omitted).  Subjectively, prison officials must act "with

13  a sufficiently culpable state of mind."  *Id.* (citation omitted); *see also Chess v. Dovey*, 790 F.3d

14  961, 972 (9th Cir. 2015) (noting that the Supreme Court has "adopted a heightened subjective

15  standard for excessive force claims—malicious and sadistic[]" (citing *Whitley v. Albers*, 475 U.S.

16  312, 320–21 (1986))).

17        Here, plaintiff has inadequately alleged that Villasenor's decision to shoot him with the

18  block gun was malicious and sadistic and for the very purpose of harming him.  Plaintiff argues

19  that one can infer malice and sadism from the allegation that Villasenor initially watched the

20  attack without intervening.  However, this argument conflates claims for deliberate indifference

21  to safety with claims for excessive force.  In *Whitley*, however, the "Supreme Court adopted a

22  heightened subjective standard for excessive force claims—malicious and sadistic—instead of the

23  subjective standard governing . . . —deliberate indifference [claims]."  *Chess*, 790 F.3d at 972

24  (citing *Whitley*, 475 U.S. at 320–21).  Moreover, it was already determined that plaintiff stated a

25  "potentially cognizable" claim for only excessive force.  ECF No. 26 at 1.

26        Furthermore, while plaintiff alleges that he was the victim of the attack and did not pose a

27  danger, he nonetheless was involved in a violent disturbance on the yard.  Thus, plaintiff's own

28  allegations suggest that Villasenor fired the block gun "to break up an inmate [assault]," *Brown v.*

1  *Rafferty*, No. 2:16-cv-1873 CKD P, 2016 WL 5234606, at *2 (E.D. Cal. Sep. 22, 2016), not to

2  maliciously and sadistically harm him.  Furthermore, plaintiff alleges that Villasenor fired only

3  one shot and does not contest that this action restored order to the yard.  These allegations,

4  likewise, do not suggest that he acted maliciously and sadistically to harm plaintiff.  *See Anderson*

5  *v. Hedgpeth*, No. 1:09–cv–01029 JLT (PC), 2010 WL 4630214, at *3 (E.D. Cal. Nov. 8, 2010)

6  (guard's use of 40 mm baton launcher to quell fight was not malicious and sadistic because she

7  "sought to restore and, in fact restored, prison order").  But more importantly, plaintiff has

8  attached to his complaint incident reports that contradict his allegation of malicious use of force.

9  Plaintiff alleges that Villasenor "immediately" shot him after ordering plaintiff and his attackers

10  "to the ground," ECF No. 23 at 13, from which he infers that he acted maliciously and

11  sadistically.  But plaintiff asserts in his opposition brief that Villasenor did not even order the

12  inmates to get down, ECF No. 37 at 8, which contradicts the allegation that he gave such an

13  order.  Further, Villasenor's incident report[1], which is attached to and referenced in the amended

14  complaint, is inconsistent with the allegation that he opened fire immediately after giving the

15  order.  ECF No. 23 at 79, 112; *see also Steckman*, 143 F.3d at 1295–96 ("[Courts] are not

16  required to accept as true conclusory allegations which are contradicted by documents referred to

17  in the complaint.").  Plaintiff's complaint does assert that Villasenor's report "leaves out the fact

18  that he allowed [plaintiff] to be attacked on the ground and stabbed before ever attempting to stop

19  it" (ECF No. 23, at 112), but this assertion simply underscores the contradictions in plaintiff's

20  allegations as to whether Villasenor fired immediately, or gave an order and then fired, or

21  responded in some other way.  Plaintiff's factual allegations must be taken as true in evaluating

22  his complaint under Rule 12(b)(6), but where the allegations contradict each other, very little can

23  be inferred factually to supply the essential elements of his claim.  When the contradictory

24  allegations are set aside, what remains is the allegation that Villasenor fired, one time, a non-

25  lethal sponge round to halt an indisputably violent incident involving several inmates, including

26  _____

27    [1] Ordinarily, the court does not look beyond the four corners of the complaint in resolving a Rule 12(b)(6) motion, *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 248 (9th Cir.1997), *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir.2001).  However, a court may consider material

28  that the plaintiff submitted as part of the complaint.  *Id.*

1    plaintiff.  The conclusory allegation that Villasenor knew plaintiff was a victim and not an

2    aggressor is dependent upon assumptions and inferences that cannot be drawn from the amended

3    complaint as drafted.  No facts are asserted from which it may plausibly be inferred that

4    Villasenor knew plaintiff was being attacked rather than simply one of the participants in the

5    violence.  The complaint must contain "enough facts to state a claim to relief that is plausible on

6    its face" and the allegations must be more than labels and conclusions.  *Bell Atl. Corp. v.*

7    *Twombly*, 550 U.S. at 562–63.

8             Plaintiff also argues that Villasenor acted maliciously and sadistically because he had

9    three reasons to retaliate against plaintiff.  *Supra* at 3.  But plaintiff fails to allege two of these

10   reasons and, therefore, they will not be considered.  *Schneider*, 151 F.3d at 1197 n.1.  The third

11   reason is that Villasenor mistakenly believed that plaintiff and other correctional officers were

12   smuggling cell phones into the prison.  However, it would be speculative to infer from this vague

13   allegation that malice and sadism motivated Villasenor when he shot plaintiff.  *See Twombly*, 550

14   U.S. at 555 (citation omitted) ("Factual allegations must be enough to raise a right to relief above

15   the speculative level . . . .").

16            Plaintiff does not allege any other facts supporting a plausible inference that Villasenor

17   maliciously and sadistically shot him to harm him.  For instance, he does not allege that he had

18   prior "verbal altercations" with Villasenor, or that Villasenor fired shots at plaintiff "after order

19   had been restored."  *Anton v. Ruiz*, No. CV F 05 0412 OWW WMW P, 2008 WL 2404746, at *4

20   (E.D. Cal. June 11, 2008), *report and recommendation adopted*, 2008 WL 2858534 (E.D. Cal.

21   July 24, 2008).  Nor does plaintiff allege that Villasenor aimed the block gun "directly at [his]

22   head."  *Provencio v. Vazquez*, 1:07-cv-00069-OWW-JLT, 2010 WL 2490937, at *6 (E.D. Cal.

23   June 16, 2010), *report and recommendation adopted*, 1:07-cv-00069-OWW-JLT (E.D. Cal. July

24   22, 2010).  True, plaintiff so asserts in his opposition.  ECF No. 37 at 9, 12–13.  Again, however,

25   this assertion is nowhere in the amended complaint.

26            In sum, plaintiff has inadequately alleged facts showing that Villasenor acted maliciously

27   and sadistically to harm him when he shot him with the block gun during the violent disturbance.

28   /////

1    Therefore, his excessive force claim against Villasenor should be dismissed.[2]

2         However, this dismissal should be without prejudice.  As noted, some of the assertions in

3    plaintiff's opposition contradict allegations in his amended complaint.  Plaintiff may, if he

4    chooses, file a second amended complaint to clarify the factual basis of his excessive force claim

5    against Villasenor.  *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citing cases) ("[A]

6    district court should grant leave to amend even if no request to amend the pleading was made,

7    unless it determines that the pleading could not possibly be cured by the allegation of other

8    facts.").

9         If plaintiff files a second amended complaint, he must clearly set forth the factual

10   allegations supporting his excessive force claim against Villasenor.  However, plaintiff may not

11   change the nature of the suit by adding additional parties to the case or asserting additional

12   claims, whether against Villasenor or the other defendants.  *George v. Smith*, 507 F.3d 605, 607

13   (7th Cir. 2007).

14        Any second amended complaint must be written or typed so that it is complete in itself

15   without reference to any earlier filed complaint.  E.D. Cal. L.R. 220.  This is because an amended

16   complaint supersedes any earlier filed complaint, and once an amended complaint is filed, the

17   earlier filed complaint no longer serves any function in the case.  *See Forsyth v. Humana*, 114

18   F.3d 1467, 1474 (9th Cir. 1997) (the "'amended complaint supersedes the original, the latter

19   being treated thereafter as non-existent.'" (quoting *Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir.

20   1967))).  The court cautions plaintiff that failure to comply with the Federal Rules of Civil

21   Procedure, this court's Local Rules, or any court order may result in this action being dismissed.

22   *See* E.D. Cal. L.R. 110.

23   /////

24   /////

25

26        [2] At this time, it is unnecessary to consider whether qualified immunity protects
     Villasenor because plaintiff failed to state a cognizable Eighth Amendment claim against him.
27   *Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("If no constitutional right would have been violated
     were the allegations established, there is no necessity for further inquiries concerning qualified
28   immunity."), *receded from on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009).

8

**IV.   Conclusion**

For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1.  Villasenor's motion to dismiss (ECF No. 35) be granted;

2.  Plaintiff's excessive force claim against Villasenor be dismissed without prejudice; and

3.  Plaintiff be granted thirty days from the date of any order adopting this recommendation in which to file a second amended complaint to clarify the factual basis of his excessive force claim against Villasenor.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within seven days after service of the objections.  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

Dated:  March 28, 2017.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE