UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC ZACHARY ANDERSON,<br><br>Plaintiff,<br><br>v.<br><br>TIM VIRGA, et al.,<br><br>Defendants. | No. 2:15-cv-1148-KJM-EFB P<br><br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis in an action brought under 42 U.S.C. § 1983. He asserts Eighth Amendment claims for excessive force and deliberate indifference to safety in his second amended complaint. The gist of the second amended complaint is that defendants unlawfully assigned him to a prison yard with known gang members, two of whom brutally assaulted him. He also alleges that defendant Villasenor unlawfully shot him with a less-lethal block gun in quelling the disturbance.

Villasenor moves to dismiss plaintiff's excessive force claim on the ground that (1) it is not cognizable and that (2) qualified immunity shields him from it. Careful review of the pleadings shows that plaintiff has stated a cognizable excessive force claim. Furthermore, taking the facts in light most favorable to plaintiff, Villasenor does not enjoy qualified immunity. Accordingly, as discussed below, the motion to dismiss should be denied.

/////

1

**I.     Background**

    **A.     Factual Allegations**

At all relevant times, plaintiff was a state inmate at California State Prison, Sacramento ("SAC"). Villasenor worked at SAC as a correctional officer. ECF No. 46 at 3–4, 13.

On November 11, 2013, plaintiff was on the B-3 Special Housing Unit exercise yard ("the yard"). *Id.* at 4, 13. The yard was "integrated," meaning up to eight members of one or more gangs were on it. *See id.* at 3; *see also* ECF No. 53 at 4.[1]

Villasenor was in the gun tower working as the primary security watch. ECF No. 46 at 13. At some point, Villasenor stuck his head out of the window and said: "You're still on freeze, huh? That sucks don't it?" *Id.* According to plaintiff, being on freeze "is when [an] inmate is put in a corner by two other inmates of the same gang and not allowed to move around the yard." *Id.* It is, he continues, "a type of discipline for a gang member in trouble." *Id.* Further, plaintiff alleges that Villasenor called him a "p[ie]ce of shit" after asking him if he was on freeze. *Id.* Thereafter, plaintiff "was escorted by 2 inmates to the corner of the yard." *Id.*

Plaintiff "was made to stand there by 2 inmates for about a half of [an] hour." *Id.* At some point, he "was forced to work out for disciplinary reasons per the inmates." *Id.* During this time, Villasenor watched him and smirked and laughed. *Id.*

After working out for over an hour nonstop, two inmates jumped on his back as he did push-ups and stabbed him fifteen times. *See id.* at 13–14. While he was on the ground being stabbed, he saw Villasenor "at the tower window laughing." *Id.* at 13.

Plaintiff broke free and got to his feet. *Id.* He ran about ten feet to escape his attackers and stopped. *Id.* He was bleeding profusely and looking at his wounds, whereupon he made eye contact with Villasenor and saw him aim his 40 mm block gun directly at his head and shoot him with a sponge round. *See id.* at 13, 15–17, 54. He went on his tiptoes and curled in to take the round in his upper shoulder instead of his head. *Id.* at 13–14.

////

---

[1] The court's citations to plaintiff's opposition clarify, as opposed to contradict, his second amended complaint. *Pegram v. Herdrich*, 530 U.S. 211, 230 & n.10 (2000) (stating that courts may consult parties' legal memoranda to clarify the meaning of ambiguous complaints).

Villasenor did not order him to get down before he shot him. ECF No. 53 at 4. Furthermore, plaintiff did not ball his fists, throw a punch, pose a threat, or otherwise act aggressively. ECF No. 46 at 15. Additionally, the disturbance had already ended when Villasenor shot him. *Id.* at 16. He adds that a 40 mm block gun "is the second most lethal weapon in [the] arsenal" of a correctional officer at CSP. ECF No. 53 at 3.

Villasenor had an improper motive to shoot plaintiff. ECF No. 46 at 17–18. Villasenor's brother also worked at CSP as a correctional officer. *Id.* at 17. Plaintiff once reported him for stealing his phone book during a cell search. *Id.* Thereafter, Villasenor's brother was removed from his "gang cop job" and assigned to transportation duty. *Id.* At some point, Villasenor asked plaintiff why he snitched on his brother. *Id.* According to plaintiff, these allegations show that Villasenor shot him to retaliate against him for filing a report against him brother. *Id.* at 18.

Similarly, plaintiff alleges that Villasenor and other CSP personnel had it out for him because they "thought he was a shot caller and . . . was smuggling contraband into prison with other [correctional] officers." *Id.* at 22. Therefore, they conspired to let the two inmates assault him in the hope that they would kill him. *See id.* 21–22. When he did not die, Villasenor "shot [him] for good measure." *Id.* at 22.

**B.     Procedural Background**

Plaintiff filed a complaint under § 1983, ECF No. 1, which he amended on March 16, 2016, ECF No. 23. In a screening order, it was determined that he stated a "potentially cognizable" Eighth Amendment excessive force claim against Villasenor. ECF No. 26 at 1.

Villasenor moved to dismiss, generally arguing that plaintiff failed to state a claim for excessive force because he used minimal force in a good-faith effort to restore discipline. ECF No. 35 at 5. The motion to dismiss was granted. ECF Nos. 43, 52. The court held that plaintiff failed to state a facially plausible claim that Villasenor's decision to shoot him was malicious as opposed to a good-faith effort to restore order. ECF No. 43 at 5–8.

/////
/////
/////

3

1   However, the court dismissed the amended complaint without prejudice. *Id.* at 8. The court noted that "some of the assertions in [his] opposition contradict[ed] allegations in his amended complaint." *Id.* Therefore, the court allowed him to file a second amended complaint "to clarify the factual basis of his excessive force claim against Villasenor." *Id.*

Plaintiff filed his second amended complaint on May 2, 2017. ECF No. 46. Therein, *inter alia*, he asserted an excessive force claim under the Eighth Amendment against Villasenor based on the above factual allegations.

Villasenor has moved to dismiss. ECF No. 50. He essentially argues that plaintiff's allegations are too "baseless and/or delusional, fantastic, irrational or incredible" to state a cognizable excessive force claim. *Id.* at 5 (citation omitted). Furthermore, he argues that Villasenor enjoys qualified immunity because there "was a bona fide need for the application of force to end [the] altercation and [plaintiff] failed to allege facts suggesting that Villasenor's use of the foam launcher to stop [the] fight was unreasonable." *Id.* at 9. The parties have completed briefing on the motion to dismiss. ECF Nos. 53, 54.

## II.     Standard of Review

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562–63, 570 (2007) (stating that the 12(b)(6) standard that dismissal is warranted if plaintiff can prove no set of facts in support of his claims that would entitle him to relief "has been questioned, criticized, and explained away long enough," and that having "earned its retirement," it "is best forgotten as an incomplete, negative gloss on an accepted pleading standard"). Thus, the grounds must amount to "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555. Instead, the "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citation omitted). Dismissal may be based either on the lack of cognizable legal theories or the lack of pleading sufficient facts to support cognizable legal theories. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (citation omitted).

The complaint's factual allegations are accepted as true. *Church of Scientology of Cal. v. Flynn*, 744 F.2d 694, 696 (9th Cir. 1984) (citations omitted). The court construes the pleading in the light most favorable to plaintiff and resolves all doubts in plaintiff's favor. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) (citation omitted).

The court may disregard allegations contradicted by the complaint's attached exhibits. *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998) (citation omitted). Furthermore, the court is not required to accept as true allegations contradicted by judicially noticed facts. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (citing *Mullis v. U.S. Bankr. Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987)). The court also may consider matters of public record. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986) (citations omitted). "[T]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754–55 (9th Cir. 1994) (citations omitted). Nor must the court accept unreasonable inferences or unwarranted deductions of fact. *Sprewell*, 266 F.3d at 988 (citation omitted).

In general, pro se pleadings are held to a less stringent standard than those drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). The court has an obligation to construe such pleadings liberally. *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc). However, the court's liberal interpretation of a pro se complaint may not supply essential elements of the claim that were not pled. *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982); *see also Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992) (per curiam).

**III.    Legal Analysis**

    **A.    Discussion**

"When prison officials use excessive force against prisoners, they violate the inmates' Eighth Amendment right to be free from cruel and unusual punishment." *Clement v. Gomez*, 298 F.3d 898, 903 (9th Cir. 2002). To establish a claim for excessive force based on a prison official's use of force during a prison disturbance, the plaintiff must show that the officer applied

the force maliciously and sadistically to cause harm rather than in a good-faith effort to maintain or restore discipline. *Hudson v. McMillian*, 503 U.S. 1, 6 (1992). The standard has objective and subjective elements. Objectively, the alleged wrongdoing must be "harmful enough to establish a constitutional violation." *Id.* at 8 (citation omitted). Subjectively, prison officials must act "with a sufficiently culpable state of mind." *Id.* (citation omitted).

Here, Villasenor has not argued that plaintiff's alleged injuries are not objectively serious. Therefore, the court will consider whether he has stated a cognizable claim that Villasenor shot him with a sufficiently culpable state of mind.

Courts consider the following nonexhaustive list of factors to determine whether a prison official's use of force during a prison disturbance is malicious and sadistic: "[1] the need for application of force, [2] the relationship between that need and the amount of force used, [3] the threat reasonably perceived by the responsible officials, and [4] any efforts made to temper the severity of a forceful response." *Hudson*, 503 U.S. at 7 (citation omitted).

In this case, plaintiff has stated a cognizable claim that Villasenor maliciously and sadistically shot him for the very purpose of harming him. Under factor one, plaintiff has adequately alleged that Villasenor did not need to shoot him with the block gun. While it is undisputed that two inmates stabbed him, he alleges that he was the victim of the assault and did not fight back. Likewise, he alleges that he had broken free from the inmates and the assault was over when Villasenor shot him. Furthermore, he seems to allege that the fight did not spread to other inmates in the yard, and Villasenor has not argued otherwise.

Under factor two, he has adequately alleged that the severity of the fight did not warrant the magnitude of the force. Again, he alleges that he did not fight back and that the assault had ended when Villasenor shot him. Furthermore, he alleges that a block gun is the second highest level of force after a firearm at SAC and that Villasenor had less drastic options at his disposal,

/////
/////
/////
/////

such as pepper spray.² Thus, even if Villasenor had a right to use some force, plaintiff has adequately alleged that the fight was not sufficiently serious for him to resort to a block gun.

Factor three favors plaintiff. To reiterate, he alleges that he did not fight back despite being assaulted. Likewise, he alleges that he had escaped his attackers and that the assault had ended when Villasenor shot him. And there is no indication that the altercation spread to other inmates in the yard. Therefore, even though the attackers violently stabbed him, he has adequately alleged that the assault did not pose a severe security threat.

Factor four also favors him. As noted, he alleges that Villasenor did not order him to get down. While Villasenor disputes this allegation, the court must take his allegations as true at the pleading stage. Furthermore, he alleges that Villasenor has less injurious weapons at his disposal. Nor is there any indication that Villasenor fired a warning shot. *See* ECF No. 46 at 79.³ Thus, plaintiff has adequately alleged that Villasenor made no effort to temper the severity of his response.

Other factors support a plausible inference of maliciousness and sadism. For one, plaintiff alleges that Villasenor aimed the gun directly at this head. Although Villasenor contends that he aimed at plaintiff's buttocks, the court must accept plaintiff's allegations as true as this stage. Villasenor counters that it was impossible for plaintiff to see him fire the gun because plaintiff allegedly was looking at his wounds when Villasenor shot him. However, while this allegation is not a model of clarity, the court does not read it so narrowly. Construing the allegation in the most favorable light, it plausibly means that plaintiff noticed he was bleeding right around the time he saw Villasenor aim at his head and open fire.

/////

---

² ECF No. 53 at 3; *see also Deorle v. Rutherford*, 272 F.3d 1272, 1279 (9th Cir. 2001) (projectile launcher firing a round "akin to a rubber bullet" delivers "force . . . much greater than that applied through the use of pepper spray"); *Castro ex rel. Castro v. City of Mendota*, No. 1:10–cv–618 AWI BAM, 2012 WL 4468419, at *11 (E.D. Cal. Sep. 26, 2012) (citations omitted) (same).

³ Plaintiff attaches this document, Villasenor's report of the incident, to the second amended complaint and references it therein. Therefore, the court may rely on it to rule on Villasenor's motion to dismiss. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (citation omitted) (courts may consider the documents that the complaint incorporates by reference when ruling on a 12(b)(6) motion to dismiss).

1    Moreover, plaintiff's allegations that Villasenor taunted and cursed at him support a
2    plausible inference of maliciousness and sadism.  He alleges that Villasenor was indifferent to the
3    fact that other inmates were putting him on freeze, laughing, smirking, and calling him a piece of
4    shit.  Further, he alleges that Villasenor accused him of snitching on his brother, which supports a
5    plausible inference of animosity.  Granted, some of these allegations may sound in failure to
6    intervene as opposed to excessive force.  *See* ECF No. 43 at 5 (stating that allegation that
7    Villasenor watched attack without intervening sounded in deliberate indifference to safety).
8    However, coupled with his other allegations, they support a plausible inference that Villasenor
9    shot him maliciously and sadistically to harm him.  *Cf. See Al–Adahi v. Obama*, 613 F.3d 1102,
10   1105 (D.C. Cir. 2010) (citations omitted) ("Those who do not take into account conditional
11   probability . . . [m]ay think that if a particular fact does not itself prove the ultimate proposition
12   . . . the fact may be tossed aside and the next fact may be evaluated as if the first did not exist.").
13   Villasenor characterizes these allegations as "flights of fancy created to deal with the
14   deficiencies in the [amended complaint]."  ECF No. 50 at 8.  But, however unlikely they may be,
15   "[t]he plausibility standard is not akin to a probability requirement."  *Ashcroft v. Iqbal*, 556 U.S.
16   662, 678 (2009) (alteration in original) (citation omitted).  Accordingly, plaintiff has stated a
17   cognizable claim that Villasenor's force was excessive.

18   **B.    Qualified Immunity**

19   Villasenor also argues that qualified immunity shields him from plaintiff's excessive force
20   claim.  He is mistaken.

21   Qualified immunity protects government officials from liability for civil damages where a
22   reasonable official would not have known that his conduct violated a clearly established right.
23   *Anderson v. Creighton*, 483 U.S. 635, 638–39 (1987).  In resolving questions of qualified
24   immunity, "courts engage in a two-pronged inquiry."  *Tolan v. Cotton*, 134 S. Ct. 1861, 1865
25   (2014) (per curiam).  "The first asks whether the facts, taken in the light most favorable to the
26   party asserting the injury, . . . show the officer's conduct violated a federal right."  *Id.* (citation
27   and bracketing omitted).  "The second prong . . . asks whether the right in question was clearly
28   established at the time of the violation."  *Id.* at 1866 (citation omitted).

A right is "clearly established" when "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640. Clearly established law should not be defined "at a high level of generality"; rather, it "must be particularized to the facts of the case." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (per curiam) (citation omitted). While this standard does not require "a case directly on point," *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011), courts typically should identify analogous cases, i.e., ones in which prison officials "acting under similar circumstances" violated the Eighth Amendment, *White*, 137 S. Ct. at 552. To be analogous, however, the case need not be "materially similar."[4]

In the Ninth Circuit, to assess whether a right is clearly established, courts first look to "Supreme Court and Ninth Circuit law existing at the time of the alleged act." *Cmty. House, Inc. v. City of Boise*, 623 F.3d 945, 967 (9th Cir. 2010) (citation omitted). Absent binding precedent, courts should consider all relevant decisional law. *Capoeman v. Reed*, 754 F.2d 1512, 1514 (9th Cir. 1985). Unpublished circuit and district court decisions inform the analysis. *Bahrampour v. Lampert*, 356 F.3d 969, 977 (9th Cir. 2004); *Krug v. Lutz*, 329 F.3d 692, 699 (9th Cir. 2003).

Here, it was clearly established by November 11, 2013 that Villasenor's force was excessive. For starters, taking plaintiff's factual allegations in the most favorable light, common sense says that Villasenor used excessive force. After all, plaintiff alleges that Villasenor harbored animosity toward him, taunted and swore at him, stood by idly when other inmates stabbed him, and shot him after the attack was over "for good measure," aiming for his head.

Furthermore, it was clearly established by the date of the incident that a prison guard may not deliberately shoot an inmate with a block gun for the purported purpose of suppressing a prison disturbance when it had already ended and the inmate did not participate in it or otherwise act aggressively. The Supreme Court established in *Hudson* that "malicious and sadistic use of

---

[4] *Hope v. Pelzer*, 536 U.S. 730, 739 (2002); *see also Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (per curiam) (stating that, "in an obvious case," general legal standards may clearly establish law "without a body of relevant cases" (citing *Hope*, 536 U.S. at 738)); *Giebel v. Sylvester*, 244 F.3d 1182, 1189 (9th Cir. 2001) (citation omitted) ("[E]ven if there is no closely analogous case law, a right can be clearly established on the basis of common sense.").

1  deadly force by a prison official against a prisoner constitutes cruel and unusual punishment
2  under the Eighth Amendment." *Estate of Adams v. Gomez*, No. 96-16423, 1998 WL 4079, at *3
3  (9th Cir. Jan. 7, 1998) (unpublished memorandum) (citing *Hudson*, 503 U.S. at 9).  Applying this
4  holding, the *Gomez* court held that it was unreasonable for a prison guard to "purposefully shoot a
5  prisoner engaged in a fist fight, aiming at his head, after giving a verbal warning to stop fighting,
6  even when the fight did not pose a significant danger to either prisoner."  *Id.*
7       Here, like in *Gomez*, plaintiff alleges that Villasenor deliberately shot him, aiming for his
8  head.  Furthermore, as in *Gomez*, he alleges that the altercation did not pose a danger to him or
9  the other inmates on the yard because it had already ended when Villasenor shot him.
10 Additionally, whereas the guard in *Gomez* verbally warned the inmates to stop fighting, there is
11 no indication that Villasenor gave such a warning.  Thus, based on the alleged facts, Villasenor
12 had even less of a need to resort to force than the guard in *Gomez*.  Accordingly, Villasenor's
13 conduct was unreasonable under the alleged circumstances.  Other cases support this conclusion.[5]
14      Villasenor's counterarguments lack merit.  He argues that he "used reasonable force under
15 the circumstances when discharging a foam launcher toward inmates who were causing a
16 disruption on the yard and refusing to 'get down' on order."  ECF No. 54 at 3.  However, this
17 argument mischaracterizes plaintiff's allegations.
18      To reiterate, he alleges that Villasenor gave no such order, that he did not fight back, that
19 the assault had ended when Villasenor shot him, and that he aimed at his head.
20      Villasenor also argues that "it was clearly established that a prison guard was permitted to
21 use even deadly force in a good faith effort to restore order."  ECF No. 50 at 8 (citing *Marquez v.*
22 *Guiterrez*, 322 F.3d 689, 692–93 (9th Cir. 2003); *Jeffers v. Gomez*, 267 F.3d 895, 912 (9th Cir.

---

[5] *Martinez v. Williams*, 474 F. App'x 674, 675 (9th Cir. 2012) (unpublished memorandum) (reversing grant of summary judgment to guard who shot inmate during a prison riot when there was a dispute as to whether the inmate was kicking another inmate at the time he was shot); *Anton v. Ruiz*, No. CV F 05 0412 OWW WMW P, 2008 WL 2404746, at *4 (E.D. Cal. June 11, 2008) (inmate stated cognizable excessive force claim where he alleged that guard had prior verbal altercations with him and fired the shots after order had been restored), *report and recommendation adopted*, 2008 WL 2858534 (E.D. Cal. July 24, 2008); *Provencio v. Vazquez*, 1:07-cv-00069-OWW-JLT, 2010 WL 2490937, at *6 (E.D. Cal. June 16, 2010) (denying summary judgment on excessive force claim where inmate alleged that guard aimed launcher directly at his head and shot him after he complied with orders to get down), *report and recommendation adopted*, 1:07-cv-00069-OWW-JLT (E.D. Cal. July 22, 2010).

2001) (per curiam)).  These cases are inapposite.  For one, they have a different posture because they were decided on summary judgment.  Two, they are factually distinguishable.  In *Marquez*, the court held that "a reasonable officer could believe that shooting [a passive] inmate in the leg to stop an assault that could have seriously injured or killed another inmate was a good faith effort to restore order, and thus lawful."  322 F.3d at 693.  Here, however, plaintiff alleges that the assault had ended when Villasenor shot him.  Furthermore, whereas the guard in *Marquez* yelled "Yard down!" before shooting the inmate, plaintiff alleges that Villasenor gave no such order.  *Jeffers*, likewise, is inapplicable.  There, the guards faced a "major racial disturbance" that "involved between 150 and 200 inmates," "lasted approximately thirty minutes, and [was] . . . one of the largest disturbances in the history of the Department of Corrections."  267 F.3d at 901.  Here, however, the fight was comparatively minor and had allegedly ended when Villasenor opened fire.  Furthermore, whereas the guards in *Jeffers* yelled "yard down" and fired warning shots before opening fire, *id.* at 902, 913, Villasenor allegedly gave no such warnings.  Accordingly, these cases are inapplicable.[6]

**IV.     Conclusion**

For the foregoing reasons, IT IS HEREBY RECOMMENDED that Villasenor's motion to dismiss (ECF No. 50) be denied.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within seven days after service of the objections.  Failure to

/////

/////

/////

---

[6] The court's analysis does not preclude Villasenor from raising a qualified immunity defense in a potential motion for summary judgment.

11

1 | file objections within the specified time may waive the right to appeal the District Court's order.
2 | *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th
3 | Cir. 1991).

Dated: July 27, 2017.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE