UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC ZACHARY ANDERSON,<br><br>Plaintiff,<br><br>v.<br><br>TIM VIRGA, et al.,<br><br>Defendants. | No. 2:15-cv-1148-KJM-EFB P<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding without counsel in this action brought pursuant to 42 U.S.C. § 1983. Defendants Meier, Riley, and Boe move for summary judgment.[1] ECF No. 80. Because the parties' filings reveal many disputed material facts, the motion must be denied.

I. **Plaintiff's Claims**

This case currently proceeds on plaintiff's second amended complaint, filed on May 2, 2017. ECF No. 46. Plaintiff alleges that defendants Meier, Riley, and Boe – correctional staff at California State Prison, Sacramento ("CSP-Sac") –were deliberately indifferent to his safety by placing him on an integrated gang yard at his Institutional Classification Committee ("ICC") hearing on October 16, 2013. *Id.* at 3. According to plaintiff, defendants knew: (1) that plaintiff had been charged with attempting to cooperate with a correctional officer to smuggle contraband

---

[1] Plaintiff also has live claims against defendant Villasenor, who has not joined in the motion nor separately moved for summary judgment.

into the institution, (2) that CSP-Sac staff had given this information to Rene Arias, an inmate and prison gang member on the integrated yard, and (3) that plaintiff would consequently be attacked if placed on the yard. *Id.* at 3-12. They nevertheless elected to place plaintiff on the yard, where Arias and another inmate stabbed and beat him a short time later. *Id.* at 11.

## II. The Motion for Summary Judgment

### A. Summary Judgment Standards

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994). At bottom, a summary judgment motion asks whether the evidence presents a sufficient disagreement to require submission to a jury.

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thus, the rule functions to "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments). Procedurally, under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

/////

A clear focus on where the burden of proof lies as to the factual issue in question is crucial to summary judgment procedures. Depending on which party bears that burden, the party seeking summary judgment does not necessarily need to submit any evidence of its own. When the opposing party would have the burden of proof on a dispositive issue at trial, the moving party need not produce evidence which negates the opponent's claim. *See, e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Rather, the moving party need only point to matters which demonstrate the absence of a genuine material factual issue. *See Celotex*, 477 U.S. at 323-24 ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See id*. at 322. In such a circumstance, summary judgment must be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id*. at 323.

To defeat summary judgment the opposing party must establish a genuine dispute as to a material issue of fact. This entails two requirements. First, the dispute must be over a fact(s) that is material, i.e., one that makes a difference in the outcome of the case. *Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). Whether a factual dispute is material is determined by the substantive law applicable for the claim in question. *Id*. If the opposing party is unable to produce evidence sufficient to establish a required element of its claim that party fails in opposing summary judgment. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322.

Second, the dispute must be genuine. In determining whether a factual dispute is genuine the court must again focus on which party bears the burden of proof on the factual issue in

question.  Where the party opposing summary judgment would bear the burden of proof at trial on the factual issue in dispute, that party must produce evidence sufficient to support its factual claim.  Conclusory allegations, unsupported by evidence are insufficient to defeat the motion. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Rather, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue for trial.  *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076.  More significantly, to demonstrate a genuine factual dispute, the evidence relied on by the opposing party must be such that a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson*, 477 U.S. at 248, 252.  Absent any such evidence there simply is no reason for trial.

The court does not determine witness credibility.  It believes the opposing party's evidence, and draws inferences most favorably for the opposing party.  *See id.* at 249, 255; *Matsushita*, 475 U.S. at 587.  Inferences, however, are not drawn out of "thin air," and the proponent must adduce evidence of a factual predicate from which to draw inferences.  *Am. Int'l Group, Inc. v. Am. Int'l Bank*, 926 F.2d 829, 836 (9th Cir. 1991) (Kozinski, J., dissenting) (citing *Celotex*, 477 U.S. at 322).  If reasonable minds could differ on material facts at issue, summary judgment is inappropriate.  *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).  On the other hand, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).  In that case, the court must grant summary judgment.

Concurrent with the motion for summary judgment, defendants advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  ECF No. 80; *see Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999); *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

/////

/////

4

## B. Analysis

Prison officials are obligated by the Eighth Amendment to take reasonable measures to protect prisoners from violence by other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). To succeed on a failure-to-protect claim against an official, an inmate must establish three elements. First, the inmate must show that he was incarcerated under conditions posing a substantial risk of serious harm. *Id.* Second, he must show that the official was deliberately indifferent to his safety. *Id.* "Deliberate indifference" occurs when an official knows of and disregards an excessive risk to an inmate's safety. *Id.* at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* Third, the inmate must show that the defendants' actions were both an actual and proximate cause of his injuries. *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1074 (9th Cir. 2013). This means that the inmate's injury would not have occurred but for the official's conduct (actual causation) and no unforeseeable intervening cause occurred that would supersede the official's liability (proximate causation). *Conn v. City of Reno*, 591 F.3d 1081, 1098-1101 (9th Cir. 2010), *vacated by* 131 S. Ct. 1812 (2011), *reinstated in relevant part by* 658 F.3d 897 (9th Cir. 2011).

Defendants put forth three arguments in favor of summary judgment: (1) that they did not control plaintiff's yard placement and thus were not the cause of the harm he suffered; (2) that they were not aware that placing plaintiff on the integrated yard would subject him to a substantial risk of serious harm; and (3) that they should be afforded qualified immunity because their conduct was objectively reasonable. The court will address each argument in turn.

### 1. Causation

The United States Court of Appeals for the Ninth Circuit directs the court, in considering the question of causation in a failure-to-protect case, to "focus on whether the individual defendant was in a position to take steps to avert the [attack], but failed to do so intentionally or with deliberate indifference." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). The court "must take a very individualized approach which accounts for the duties, discretion, and means of each defendant." *Id.* at 633-34.

### a. Defendant Boe

Defendants argue that Boe's participation on plaintiff's ICC did not cause plaintiff to be placed on the integrated yard because Boe had no power to make any decision regarding plaintiff's yard placement. According to defendants, individual members of an ICC lack decision-making authority regarding inmate housing. Instead, housing decisions are made solely by the committee chairperson. ECF No. 80-2, Defs.' Statement of Undisputed Facts ISO Summ. J. ("DUF") No. 3. Defendants rely on the declaration of S. Martin, a Classification Staff Representative for CDCR. ECF No. 80-4, ¶ 1. Martin declares that "[ICC] recommendations and decisions are generally discussed by committee members, but are ultimately rendered by the Chairperson of the committee." *Id.*, ¶ 7. According to defendants, Boe's only function at the hearing was "updating institutional forms as requested by the head of the committee." ECF No. 80-1 at 12.

Plaintiff disputes that housing decisions are rendered solely by the ICC chair, and points to the CDC Form 128G documentation generated after his October 16, 2013 hearing, which states that the "committee elects" to place plaintiff on the yard. ECF No. 80-4 at 23. The court notes that the regulations governing the work of ICCs nowhere indicate that the chairperson has ultimate decision-making authority. Instead, they state that the housing determination "shall be made by a classification committee composed of staff knowledgeable in the classification process." Cal. Code. Regs. tit. 15, § 3375(c); Cal. Dep't of Corr. & Rehab. ("CDCR") Operations Manual § 62010.8 (available at https://www.cdcr.ca.gov/Regulations/Adult_Operations/docs/DOM/DOM%202018/2018%20DOM.pdf). *See also* Cal. Code Regs. tit. 15, §§ 3376(c)(2), 2276(d)(3); CDCR Operations Manual §§ 62010.8.1, 62010.8.2. The language of both the Form 128G and the regulations suggests collective action, rather than a determination made by a sole decisionmaker. Plaintiff declares that, at the hearing, defendant Meier informed plaintiff, "We are sending you to the group yard"

/////
/////
/////

6

and then asked defendants Riley and Boe if they agreed.[2]  ECF No. 86 at 205.  Riley and Boe replied, "Yes."  *Id.*

In addition, plaintiff declares that he informed the ICC that he was not a gang member and thus should not be placed on the yard and that, because gang members knew he had tried to work with a correctional officer to smuggle contraband into the prison, he would be in danger on the yard.  ECF No. 86 at 24.  In plaintiff's view, if the ICC had elected to keep plaintiff off the yard while investigating his claims of danger, he would not have been attacked.  While defendants dispute whether plaintiff made such a report to the committee, it is not for the court on summary judgment to resolve the credibility dispute.  If a jury credits plaintiff's testimony it could reasonably find for plaintiff on the question.

The evidence before the court thus presents a factual dispute as to whether the decision to place plaintiff on the gang yard was made by the ICC chairperson or by the committee acting together.  There is also a dispute as to whether defendant Boe, having been notified that plaintiff believed his safety would be at risk on the integrated yard, could have taken some action to stop or delay the yard placement.  The evidence does not show indisputably that defendant Boe did not have any part in the decision to place plaintiff on the gang yard.  *See Lemire*, 726 F.3d at 1081 ("If reasonable persons could differ on the question of causation then summary judgment is inappropriate and the question should be left for a jury.").

/////

---

[2] Defendants raise a general objection to plaintiff's declarations as well as the declaration of his then-cellmate, inmate Jacquez, that the declarations contain speculations not based on the personal knowledge of the declarant.  ECF No. 87 at 5-6.  In determining what portions of the declarations to consider in assessing the propriety of summary judgment, the court must focus not on whether the evidence is presented in an admissible form but rather whether the contents of the evidence could be presented in an admissible form at trial.  *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003).  In preparing these findings and recommendations, the court has considered only those portions of the declarations based on the personal knowledge of the declarant.  As to hearsay statements (e.g., what inmate Jacquez avers about what inmate Arias told him), the court has considered those statements where plaintiff may subpoena the actual declarant at trial to testify directly.  Defendants also object to medical records submitted by plaintiff.  These records were not relevant to the issues raised in defendants' motion for summary judgment and thus were not considered by the court.

### b. **Defendant Meier**

Defendants rely on the same argument as to defendant Meier – i.e., that he was not the ICC chairperson and thus did not have authority to place plaintiff on the integrated yard. Plaintiff disputes that Meier was not the chair but that dispute is immaterial.[3] Rather, the claim against Meier turns on what participation he had in the decision and whether he could have taken some action to prevent plaintiff's placement on the yard. As discussed above, the evidence is disputed as to what role non-chair ICC members have in inmate housing decisions; it is not clear from the evidence before the court that the chairperson has sole decision-making authority and that Meier could not have prevented the yard placement. Accordingly, summary judgment in favor of defendant Meier cannot be granted on the basis that he did nothing to cause plaintiff to be placed on the yard.

### c. **Defendant Riley**

Defendants present the same argument as to defendant Riley, and it must be rejected for the same reasons – the evidence does not indisputably show that non-chair ICC members have no role in yard-placement decisions generally or that Riley specifically could not have taken some action in his role as ICC member to prevent plaintiff's placement on the gang yard.

### 2. **Defendants' Subjective Intent**

Defendants argue that the undisputed facts show that they lacked the subjective intent element necessary to prove deliberate indifference. To determine whether an official had the state of mind necessary to show deliberate indifference, a plaintiff must show two things: (1) that the official was aware of the risk of harm (or that the risk was obvious) and (2) that the official lacked a reasonable justification for exposing the inmate to the risk. *Lemire*, 726 F.3d at 1078.

Defendants argue that Boe had no knowledge that plaintiff faced a risk of harm on the integrated yard because Boe was providing relief coverage at the ICC hearing on short notice, had not reviewed plaintiff's file, had no knowledge of plaintiff's disciplinary history, had no knowledge of any of the inmates on the integrated yard, and was present only to update CDCR

---

[3] The Form 128G states that the committee chair that day was J. Macomber. ECF No. 80-4 at 23

forms. DUF Nos. 16, 17, 25, 28. Defendants similarly argue that Riley had a limited role at the hearing and knew nothing that would indicate a risk to plaintiff on the yard. DUF Nos. 18, 23, 26, 29. According to defendants, Meier actually believed that plaintiff could be placed on the yard *without* risk, because plaintiff was a validated member of the Northern Structure prison gang, which consists primarily of Hispanic inmates from Northern California, and because plaintiff had previously been safely housed with Hispanic inmates from Northern California. DUF Nos. 19-21. Meier knew that the gang yard had only Hispanic inmates from Northern California or their associates, and neither Arias nor Larios (the attackers) were on plaintiff's "enemies list." *Id.*; DUF Nos. 9-14.

A jury may well credit those accounts of what occurred in the ICC hearing and decision making as to plaintiff's placement. But on the other hand, plaintiff declares that he informed all ICC members at the hearing that "I was not a gang member and should not be placed on B3 SHU integrated gang yard [and] that the inmates on that yard had knowledge that I was working with C/O [Correctional Officer] Deleon and I could be killed." ECF No. 86 at 204. (Plaintiff was contesting his gang validation at the time. ECF No. 86 at 169.) According to plaintiff, defendants laughed and taunted plaintiff that a guy with so many tattoos was scared. ECF No. 86 at 204; ECF No. 86 at 168. Plaintiff's former cell-mate, inmate Jacquez, declares that he entered the room for his ICC hearing directly after plaintiff's hearing. ECF No. 58 at 6. Mr. Jacquez avers:

> When I entered the office, A.W. [Assistant Warden] R. Meir [sic] was laughing and talking to Cpt. Riley & Sgt. Boe. They looked at me and said, "How long do you think your celly 'Mr. Anderson' will last before they get him?" All three continued to chuckle, telling me that "Mr. Anderson" was working with C/O Deleon on C Yard. R. Meir then asked if we checked his paperwork. I said, "I don't know what you are talking about," he said you'll see Arias has it. Referring to our neighbor in B-3.

*Id.*[4]

---

[4] There is a dispute among the parties about whether, at some point before the ICC hearing, defendant Meier had provided a copy of the incident report that had been issued to plaintiff over the contraband-smuggling scheme to inmate Arias, one of the individuals who attacked plaintiff on the yard. *See* ECF No. 86 at 162. Plaintiff believes that Meier gave the report to Arias. Defendants dispute that fact but have not provided a declaration from defendant Meier.

9

Undoubtedly, defendants dispute that account. But if this evidence is believed, it corroborates plaintiff's claims that defendants knew he would be in danger on the yard because Arias knew plaintiff had attempted to work with a correctional officer to smuggle contraband into the prison.

Defendants argue that, if plaintiff had raised safety concerns at the hearing, some official at the hearing would have documented them on the Form 128G. The fact that the document does not contain any note of such concerns, in defendants' view, means that plaintiff did not raise concerns. But plaintiff unequivocally testifies – in all his declarations and during his deposition – that he did raise those concerns, and no defendant has provided a declaration directly rebutting plaintiff's testimony or testifying about the hearing in any other way. Had they done so, it would only underscore the point that there are disputed issues of fact as to what plaintiff had informed the committee.

Defendants also argue that, even if plaintiff did raise his concerns at the hearing, they were too speculative to provide defendants with an awareness of risk that would subject them to liability under the Eighth Amendment. But a reasonable factfinder could conclude from the evidence presented by plaintiff that he provided defendants with a quite specific risk – that the gang members on the yard knew that he had attempted to work with a correctional officer to smuggle contraband into the institution and that plaintiff believed that, because of this, his life would be in danger on the yard. Plaintiff was not being placed with a large group of people from whom he felt some vague risk, but rather with less than 10 gang members or affiliates who, if his version of events is credited, were likely to attack him because he had broken some unwritten rule among those inmates of prison behavior.

In addition, plaintiff argues that defendants have provided no reason why he was moved from administrative segregation with walk-alone yard (meaning inmates are in separate caged yards and cannot physically interact) to the B3 SHU with the integrated gang yard. ECF No. 86 at 3. Indeed, defendants' papers do not speak to why the move was made. Thus, there is a triable issue of material fact regarding whether defendants had a reasonable justification for placing plaintiff on the yard.

As plaintiff has presented evidence that a reasonable jury could rely on to find that he told defendants that his safety was at risk if he were placed on the yard but defendants laughed and placed him on the yard anyway, summary judgment cannot be granted to defendants as to this issue.

### 3. **Qualified Immunity**

Lastly, defendants argue that the court should afford them qualified immunity. To determine whether to do so at the summary judgment stage, the court must consider whether the undisputed facts show that a constitutional violation occurred, and whether the constitutional right at issue was clearly established at the time of the incident. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). If the undisputed facts show no constitutional violation, or if the right was not clearly established, the court should grant the official qualified immunity. *Id.* In determining whether the right was clearly established, the court must ask (1) whether the law governing the official's conduct was clearly established and (2) whether a reasonable official, in the same position faced by the defendants, would understand that his conduct violated the law. *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

Here, the crux of defendants' argument for qualified immunity is that they simply did not do what plaintiff claims they did, rather than assert some lack of clarity in the law at the time. The constitutional right of an inmate to be free from violence at the hands of other inmates has been clearly established since *Farmer v. Brennan*, 511 U.S. 825 (1994). *Castro v. Cnty. of L.A.*, 797 F.3d 654, 663 (9th Cir. 2017). The contours of the right were set forth with sufficient clarity in *Farmer* to guide a reasonable officer. *Id.* at 664. Defendants argue that they should be afforded immunity because reasonable officials in their position would not understand that their conduct violated the law.

In seeking qualified immunity, defendants rely heavily on *Estate of Ford v. Ramirez-Palmer*, 301 F.3d 1043 (9th Cir. 2002). In that case, an inmate at California Medical Facility-Vacaville ("CMF") was killed by his cellmate, who had a history of exceedingly violent behavior. *Id.* at 1045. The Ninth Circuit found that the district court should have granted summary judgment to the correctional officials who had decided to house the two inmates together. *Id.*

11

The Court of Appeals concluded that, with the information each official possessed – notably, that the violent inmate had successfully housed with other inmates in the past, including the victim, and that both inmates wished to be housed together – a reasonable officer could have thought that the violent inmate did not pose a substantial risk of serious harm to the victim. *Id.* at 1051-53. The record does not establish that plaintiff wanted to be placed together with the gang member whom he feared.

The Court of Appeals has since emphasized that, in *Ford*, the inmates consented to be housed together and had previously been housed together safely. *Castro v. Cnty. of L.A.*, 797 F.3d 654, 668-69 (9th Cir. 2017). It has further emphasized that the question of whether an official's conduct was reasonable in light of clearly established law is "a fact-specific inquiry." *Id.* at 669.

The question before the court is therefore: do the facts taken in the light most favorable to plaintiff show that reasonable officers would have believed it lawful to assign plaintiff to the integrated yard? Plaintiff has presented evidence that he informed defendants that he feared for his safety on the yard because he was not a gang member and had incurred disfavor from at least one gang member on the yard. This presents the opposite scenario from *Ford*, where the victim consented to the housing decisions. Additionally, plaintiff has presented evidence that, when he raised his concerns, defendants laughed at him. If his evidence is credited, which is for a jury to determine, they then joked to his cellmate about how long plaintiff would "last" on the integrated yard. Crediting plaintiff's evidence at this stage, as the court must, this is not a case of officials making a reasonable mistake as the law but rather exhibiting indifference, or even spite, toward plaintiff's right to be free from inmate violence. Accordingly, defendants' request for qualified immunity must be denied at this time.

/////
/////
/////
/////
/////

**III. Conclusion and Recommendation**

In accordance with the above, it is HEREBY RECOMMENDED that the April 16, 2018 motion for summary judgment (ECF No. 80), brought by defendants Meier, Riley, and Boe, be DENIED.[5]

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: October 11, 2018.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

---

[5] Because the undersigned recommends that the court deny the motion because plaintiff has raised triable issues of material fact on the points raised by defendants, the court need not consider plaintiff's alternative request that the court deny the motion under Federal Rule of Civil Procedure 56(d) because defendants have withheld evidence from him. *See* ECF No. 86 at 15.